UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

**DEBORAH LAUFER**, individually,

*Plaintiff*,

*-against-*

**DOVE-HESS HOLDINGS, LLC**,

*Defendant*.

**NOTICE OF SUPPLEMENTAL AUTHORITY**

Civil Action No. 5:20-cv-379 [BKS/ML]

Defendant Dove-Hess Holdings, LLC hereby gives notice of legal authority relevant to this litigation and, more specifically, to this Court's pending inquiry into Plaintiff's standing (Dkt. No. 4). On September 25, 2020, District Judge Allen Winsor of the United States District Court for the Northern District of Florida, Gainesville Division, issued an Order denying Plaintiff Deborah Laufer's motion for summary judgment and dismissing her complaint for lack of standing. A copy of Judge Winsor's decision is attached hereto as **Exhibit A**.

The conclusions and analysis provided by the Northern District of Florida directly relate to issues in the Deborah Laufer cases before this Court:

1. In dismissing the Complaint, Judge Winsor determined that Ms. Laufer did not establish any legally cognizable injury, and thus, did not have standing to maintain the action.
2. In finding a lack of standing, Judge Winsor reasoned that Ms. Laufer must do more than view information on a website to sustain an injury, as a bare procedural violation is insufficient under *Spokeo v. Robbins*. Notably, because Ms. Laufer did not plead or establish her intention to "visit the hotel or the area where it is located," she did not establish a concrete and particularized injury. Ms. Laufer's proposed amended complaint attempts to address this pleading deficiency.
3. Judge Winsor considered Ms. Laufer's status as a tester, and considered *Havens Realty Corp. v. Coleman*, both of which Ms. Laufer asks this Court to consider, and still found that Ms. Laufer did not allege or establish a concrete and particularized injury.

Lastly, it is worth mentioning that Judge Winsor's decision was issued in Plaintiff Deborah Laufer's home state of Florida.

**Dated**: September 29, 2020
Syracuse, New York

**BARCLAY DAMON LLP**

By: __/s/ Anneliese R. Aliasso ______
Robert J. Thorpe (517411)
Anneliese R. Aliasso (700385)

Barclay Damon LLP
125 East Jefferson Street
Syracuse, New York 13202
Telephone: (315) 425-2700
*Attorney for Defendant*

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA GAINESVILLE DIVISION**

**DEBORAH LAUFER,**

**Plaintiff,**

**v.** **Case No. 1:19-cv-200-AW-GRJ**

**ARPAN, LLC, d/b/a AMERICA'S BEST VALUE INN,**

**Defendant.**

_________________________________/

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND DISMISSING CASE FOR LACK OF JURISDICTION**

In late 2019, in this District alone, Deborah Laufer filed more than fifty ADA lawsuits against hotel owners.[1] Most have settled, but not all. This is one of the remaining cases.

---

[1] *Laufer v. Krishna RNS2005 Inc.*, 1:19-cv-198-AW-GRJ; *Laufer v. Arpan LLC*, 1:19-cv-200-AW-GRJ; *Laufer v. MSB Hotels III LLC*, 1:19-cv-201-MW-GRJ; *Laufer v. Abjulhussein*, 1:19-cv-202-AW-GRJ; *Laufer v. Kabir Inc.*, 1:19-cv-203-AW-GRJ; *Laufer v. Ershco LLC*, 1:19-cv-204-AW-GRJ; *Laufer v. Komo, Inc.*, 1:19-cv-205-AW-GRJ; *Laufer v. OM MAA OM LLC*, 1:19-cv-206-AW-GRJ; *Laufer v. Off the Dime Inc.*, 1:19-cv-207-MW-GRJ; *Laufer v. Jai Balaiji Inc.*, 1:19-cv-208-AW-GRJ; *Laufer v. Komo, Inc.*, 1:19-cv-209-AW-GRJ; *Laufer v. 201 Miracle FWB LLC*, 1:19-cv-224-AW-GRJ; *Laufer v. B J Hosp. Inc.*, 1:19-cv-259-AW-GRJ; *Laufer v. Bluewater Bay Hotel Grp. LLC*, 1:19-cv-260-AW-GRJ; *Laufer v. Tapper & Co. Props Mgmt. Inc.*, 1:19-cv-261-AW-GRJ; *Laufer v. BSREP II WS Hotel TRS Sub LLC*, 1:19-cv-263-AW-GRJ; *Laufer v. Hariaum Invs. Inc.*, 1:19-cv-264-AW-GRJ; *Laufer v. AJ Hosp. FWB LLC*, 1:19-cv-265-AW-GRJ; *Laufer v. Bennett's Reef Inc.*, 1:19-cv-266-AW-GRJ; *Laufer v. Resort Hosp. Enters. Ltd.*, 1:19-cv-267-AW-GRJ; *Laufer v. The Flagler of St. Augustine LLC*, 1:19-cv-268-AW-GRJ; *Laufer v. Gulf Walton, Inc.*, 1:19-cv-269-AW-GRJ; *Laufer v. Rudrah LLC*, 1:19-cv-270-AW-

Laufer's claim is straightforward: The ADA prohibits discrimination based on disability in places of public accommodation. 42 U.S.C. § 12182(a). And related regulations require hotel operators to ensure disabled persons "can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms." 28 C.F.R. § 36.302(e)(1)(i). More specifically, hotels must "[i]dentify and describe accessible features in the hotels and guest rooms . . . in enough detail to reasonably permit

---

GRJ; *Laufer v. Shawn Invs. LLC*, 1:19-cv-272-AW-GRJ; *Laufer v. Panama City Beach Hotel LLC*, 1:19-cv-273-MW-GRJ; *Laufer v. Cape San Blas Bed and Breakfast LLC*, 1:19-cv-274-AW-GRJ; *Laufer v. PTW LLC*, 1:19-cv-275-AW-GRJ; *Laufer v. Bennett's Reef Inc.*, 1:19-cv-276-AW-GRJ; *Laufer v. Krishna Ventures of Panama City Beach, LLC*, 1:19-cv-277-AW-GRJ; *Laufer v. Shiva Hotel, Inc.*, 1:19-cv-278-AW-GRJ; *Laufer v. Ashton, LLP*, 1:19-cv-279-AW-GRJ; *Laufer v. Relax Hosp. LLC*, 1:19-cv-00280-AW-GRJ; *Laufer v. P & R Hosp. LLC*, 1:19-cv-281-AW-GRJ; *Laufer v. J & K Sai Hosp. LLC*, 1:19-cv-282-AW-GRJ; *Laufer v. Bay Beach Hotel LLC*, 1:19-cv-283-AW-GRJ; *Laufer v. Club Destin Condo. Ass'n Inc.*, 1:19-cv-287-AW-GRJ; *Laufer v. EJRFA LLC*, 1:19-cv-291-MW-GRJ; *Laufer v. Dolphin Cove Inn Inc.*, 1:19-cv-292-AW-GRJ; *Laufer v. Guru Krupa Inc.*, 1:19-cv-293-AW-GRJ; *Laufer v. Shreya Hosp. Inc.*, 1:19-cv-294-AW-GRJ; *Laufer v. Shiv Shakti Hosp. LLC*, 1:19-cv-295-AW-GRJ; *Laufer v. ABEC Resort II LLC*, 1:19-cv-296-AW-GRJ; *Laufer v. Jay Shree Hari Krishna Inc.*, 1:19-cv-297-AW-GRJ; *Laufer v. Astha Laxmi LLC*, 1:19-cv-298-AW-GRJ; *Laufer v. Hughes Resort Inc.*, 1:19-cv-303-AW-GRJ; *Laufer v. Temple Hill Inc.*, 1:19-cv-305-AW-GRJ; *Laufer v. Woodspring Suites Panama City LLC*, 1:19-cv-306-AW-GRJ; *Laufer v. Roya Int'l Hotel Invs. LLC*, 1:19-cv-308-MW-GRJ; *Laufer v. Kus-Amba Inc.*, 1:19-cv-311-AW-GRJ; *Laufer v. Pine Forest Hosp. Inc.*, 1:19-cv-318-AW-GRJ; *Laufer v. Pirates Bay Cmty. Ass'n Inc.*, 1:19-cv-326-AW-GRJ; *Laufer v. Surti Inv.*, 3:19-cv-4807-TKW-EMT; *Laufer v. EJRFA LLC*, 3:19-cv-4868-MCR-MJF; *Laufer v. Roya Int'l Hotel Invs. LLC*, 3:19-cv-4885-MCR-HTC; *Laufer v. Panama City Beach Hotel LLC*, 5:19-cv-475-TKW-MJF.

individuals with disabilities" to assess whether a hotel meets their needs. *Id.* § 36.302 (e)(1)(ii). Arpan, LLC, operates a hotel—America's Best Value Inn—and Laufer contends it did not comply. Laufer sued, seeking attorney's fees and injunctive relief. ECF No. 3.

The parties completed discovery, and Laufer moved for summary judgment. ECF No. 28. After a hearing, I directed additional briefing on standing, specifically whether Laufer had any concrete and particularized injury. ECF No. 42; *see also* ECF Nos. 43, 44. Having considered the parties' arguments, I now conclude that Laufer has not established any legally cognizable injury.

As her attorney indicated at the hearing, and as her briefing confirms, Laufer's asserted injury is this: She cannot view on the Value Inn website information that ADA regulations say should be on the Value Inn website. This is not enough. Laufer asserts no need for the information—no use for it whatsoever. She has no plan to ever visit the hotel or the area where it is located. With or without the information at issue, Laufer will never stay in the Value Inn.

Because the claimed "injury" is not the type of constitutional injury that confers standing, the court lacks Article III jurisdiction. And that means the case must be dismissed.

**I.**

The essential facts are not disputed. Laufer suffers from several disabilities. ECF No. 27-1 ¶ 1 (Laufer Decl.). She has difficulty walking without an assistive device and generally uses a cane or wheelchair. She has vision impairments and limited use of her hands. *Id.* These disabilities leave her unable to engage in major life activities. *Id.*

The Value Inn has a website, which Laufer accessed.[2] *Id.* ¶ 7. The website lacked certain information Laufer says the ADA requires, like details about the accessibility features in each room. *Id.* ¶¶ 7-8. She also visited third-party travel websites, and they likewise omitted this information about the Value Inn.

When making travel reservations, Laufer cannot rely on generic information about a hotel's "accessible bathroom" or "disabled parking"; she needs more detail to determine whether a hotel room can accommodate her disabilities. *Id.* The fact that the Value Inn's website (and third-party websites promoting the Value Inn) omitted this detail made Laufer feel humiliated and frustrated. *Id.* ¶ 9.

---

[2] Although there is a dispute about when Laufer accessed the website, *compare* ECF No. 27-1 ¶¶ 7, 10 *with* ECF No. 31 at 4-5, there is no dispute that she visited the website at some point before filing suit.

Although deterred, Laufer returned to the website, and she intends to again in the future. *Id.* ¶¶ 9-11. As noted above, though, Laufer has no plan to visit the Value Inn or stay there. *See generally id.*; *see also* Hrg. Transcript at 10:23-11:2.[3]

**II.**

Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." *Id.* § 12182(a).

Laufer has established that she qualifies as a person with a disability under § 12102 and that the Value Inn qualifies as a "place of public accommodation" under § 12181(7)(A). And she has presented evidence that the Value Inn's website did not "[i]dentify and describe accessible features in the hotels and guest rooms . . . in enough detail to reasonably permit individuals with disabilities" to determine whether a particular room meets their accessibility needs. 28 C.F.R. § 36.302 (e)(1)(ii). But none of this helps with the question of whether she has standing.

[3] Citations to the hearing transcript are to the rough transcript from the August 20, 2020 hearing.

Article III of the Constitution limits the court's jurisdiction to "Cases" and "Controversies." *Lujan v. Defs. of Wildlife*, 504 U.S. 555 at 559-60 (1992). Standing is essential to the case-and-controversy requirement: it is "indispensable" to every plaintiff's case. *Id.* at 561. If a plaintiff lacks standing, the court lacks subject matter jurisdiction. *Id.*; *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1998).

To have standing, Laufer must show an injury in fact, meaning the "invasion of a legally protected interest" that is concrete and particularized. *Lujan*, 504 U.S. at 560. And because she seeks injunctive relief, she must also demonstrate that it is likely she will suffer a future injury. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328-29 (11th Cir. 2013); *see also Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001). The question is whether her injury—viewing a noncompliant website—constitutes a constitutional injury.[4]

[4] The question is not whether she will, in fact, revisit the website. Laufer points to the multifactor test from *Houston*, which sometimes helps in determining whether there is a *future* injury. 733 F.3d at 1336-37 & n.6. (As other courts have observed, though, the factors from *Houston* are not perfectly suited to address the interplay between a website and a physical location and their conformity with the ADA, especially when the plaintiff has no intent of visiting the physical location. *See, e.g.*, *Kennedy v. Sai Ram Hotels LLC*, No. 8:19-CV-483-T-33JSS, 2019 WL 2085011, at *3 (M.D. Fla. May 13, 2019) ("This Court has observed that *Houston*'s traditional factor test, which was designed for cases involving physical barriers, may be challenging to apply in cases involving websites."); *Kennedy v. Floridian Hotel, Inc.*, No. 1:18-CV-20839-UU, 2018 WL 10601977, at *5 (S.D. Fla. Dec. 7, 2018) ("[T]he application of these [*Houston*] factors when discussing a website, as opposed

As a preliminary matter, Laufer's status as a self-described "tester" is no obstacle. It is settled that a plaintiff's tester motive does not foreclose standing under Title III. *Houston*, 733 F.3d at 1329-34. But it is likewise settled that tester status alone is not enough. *Id.* at 1334. Laufer remains subject to the same standing requirements as every other plaintiff seeking injunctive relief. She must show a real injury. *See Carello v. Aurora Policemen Credit Union*, 930 F.3d 830, 833 (7th Cir. 2019) ("A tester must still satisfy the elements of standing, including the injury-in-fact requirement.").[5]

In *Spokeo, Inc. v. Robins*, the Supreme Court considered whether a technical violation of a statute constituted a real injury for standing purposes. 136 S. Ct. 1540, 1550 (2016). The plaintiff in *Spokeo* sued under the Fair Credit Reporting Act, claiming a report featured false information about him. *Id.* at 1546. He alleged no harm from the false report, only that the defendant violated the Act. *Id.*

---

to physical property, is uncertain: The traditional four-factor test for future injury, which was designed for cases involving physical barriers, is simply very challenging to be applied here, which involves the violation of a regulation that regulates online reservation system." (quotation and citation omitted))). Regardless, even assuming she will revisit the website, that would not constitute a cognizable future injury. She can show no future injury for the same reason she has shown no past injury.

[5] The tester plaintiff in *Houston* easily satisfied the standing requirement. He alleged that he encountered architectural barriers at a market he visited and that he planned to return to the market in the future. 733 F.3d at 1326.

The Court concluded that Article III requires more than a "bare procedural violation." *Id.* at 1550. It reasoned that while Congress can elevate an intangible harm to create a statutory right, violation of that right will not confer standing if it is "divorced from any concrete harm." *Id.* at 1549-50 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009), and *Lujan*, 504 U.S. at 572); *see also id.* at 1547-48 ("Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." (quoting *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997))); *Nicklaw v. CitiMortgage, Inc.*, 855 F.3d 1265, 1268 (11th Cir. 2017) (Pryor, J., respecting denial of rehearing en banc) ("[T]he violation of a legal right alone does not satisfy the concrete injury requirement.").

As applied in *Spokeo*, the Court recognized that even if the defendant violated the statute by reporting incorrect information, that violation did not necessarily "cause harm or present any material risk of harm." 136 S. Ct. at 1550; *see also Thole v. U. S. Bank N.A.*, 140 S. Ct. 1615, 1620-22 (2020) (holding that the "plaintiffs have no concrete stake in this dispute and therefore lack Article III standing" when "[w]inning or losing this suit would not change the plaintiffs' monthly pension benefits."). As applied here, assuming the Value Inn violated the ADA (or related regulations) by omitting details on its website, Laufer has not shown that the

violations caused her real harm. Information about a hotel's available rooms does not help those who (like Laufer) have no interest in booking a room.

Other ADA cases support this point. In *Griffin v. Department of Labor Federal Credit Union*, for example, a blind plaintiff sued under Title III of the ADA, claiming a credit union's website was not accessible. 912 F.3d 649, 652 (4th Cir. 2019). The plaintiff alleged the ADA required the website to be compatible with his screen-reading software and that because it was not, his efforts to access the website were stymied. *Id.* Citing *Spokeo*, the Fourth Circuit found the claimed injury neither concrete nor particularized. *Id.* at 654-56.

The plaintiff was ineligible for membership in the credit union, and the court concluded that no real injury flowed from his missing out on information that would never benefit him. *Id.* at 654. The court held that the "[i]nability to obtain information is sufficiently concrete to constitute injury in fact only when the information has some relevance to the litigant." *Id.* (citing *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21 (1998)). In *Griffin*, the plaintiff's ineligibility "close[d] the door of the Credit Union to Griffin whether or not he obtains the information he seeks." *Id.* at 654. Here, Laufer is not precluded from doing business with the Value Inn, but she might as well be: she has announced that she has no plans to go to there.

The court in *Griffin* also found the claimed injury was not particularized because the website treated the plaintiff the same as everyone else. *Id.* at 654-55. An

intent to visit a physical location may supply a sufficient "particularizing connection" between a website and that location, but without that intent, there was nothing to differentiate the plaintiff from any member of the general public. *Id.* at 655. The court equated the legal barriers that precluded the plaintiff from joining the credit union to the geographic barriers that prevent a person from being injured by a faraway inaccessible location they never intend to visit. *Id.* at 656 (citing *Houston*, 733 F.3d at 1334, 1336). Here, too, there is nothing to differentiate Laufer's harm from the harm of any other person who visits the website and discovers noncompliance with regulations.

Laufer does say that the website violation frustrated and humiliated her. And to be sure, dignitary and stigmatic harms can constitute an injury in fact. *Allen v. Wright*, 468 U.S. 737, 754-55 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129-30 (2014); *see also Tennessee v. Lane*, 541 U.S. 509, 536 (2004) (Ginsburg, J., concurring) (noting that the ADA was enacted, in part, to protect the disabled from stigmatic harms). But "not all dignitary harms are sufficiently concrete to serve as injuries in fact," *Griffin*, 912 F.3d at 654, and Laufer has not shown any such harm that would support standing. "[M]erely browsing the web, without more, isn't enough to satisfy Article III." *Brintley v. Aeroquip Credit Union*, 936 F.3d 489, 494 (6th Cir. 2019); *accord id.* ("The internet is a vast and often unpleasant place. It contains plenty that may

offend, and those who set out *looking* for dignitary slights won't be disappointed."); *Carello*, 930 F.3d at 834 ("[D]ignitary harm stemming from the mere knowledge that discriminatory conduct is occurring is an 'abstract stigmatic injury' that the plaintiff lacks standing to vindicate." (quoting *Allen*, 468 U.S. at 755-56)).

The bottom line is that, like the plaintiff in *Griffin*, Laufer has shown no concrete and particularized injury. She has shown only that the website omitted information that would be useless to her. And whatever harm she has shown is the same harm every other website visitor would suffer. *See also Carello*, 930 F.3d at 834 (citing *Griffin* and *Spokeo* and holding that plaintiff ineligible for credit union membership lacked standing to bring ADA challenge regarding website accessibility); *Brintley*, 936 F.3d 489 (same); *Price v. Orlando Health, Inc.*, No. 617CV1999ORL40DCI, 2018 WL 6434519, at *1, *4-5 (M.D. Fla. Dec. 7, 2018) (holding that blind plaintiff lacked standing to sue hospital over inaccessible website when he had no concrete plans to visit the hospital); *Hernandez v. Caesars License Co., LLC*, CV1906090RBKKMW, 2019 WL 4894501, at *3 (D.N.J. Oct. 4, 2019) ("In this case, Defendant's alleged non-disclosure of accessibility information could conceivably harm a person with disabilities, provided that person was actually looking for a place to stay in Atlantic City. But Plaintiff is not such a person. He had no interest in staying at Harrah's. Rather, his sole interest in visiting the Website was to determine if it complied with the ADA, and there is no allegation that Defendant's

conduct impeded him in that quest. Because Plaintiff cannot show harm stemming from Defendant's non-disclosure, he cannot show concrete injury." (citations omitted)).

Unable to distinguish *Spokeo* in any meaningful way, Laufer points to a different case, *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). In that case, tester plaintiffs investigated whether defendants were violating the Fair Housing Act through "racial steering." *Id.* at 366. Two plaintiffs—one black and one white—inquired about the availability of apartments. The white plaintiff was told there was availability; the black plaintiff was told there was not. *Id.* at 367-69. Standing was among the issues in the case, and the Court found that the black tester plaintiff had standing even though she did not intend to rent an apartment. *Id.* at 373-74.

In Laufer's view, she is just like that plaintiff. ECF No. 43 at 3. Her logic is this: the *Havens Realty* plaintiff was a tester who never intended to rent an apartment; she is a tester who never intended to visit the Value Inn; because the plaintiff in *Havens Realty* had standing, she should too. But Laufer's case is different in several ways. First, there were multiple plaintiffs in *Havens Realty*. One of the plaintiffs, a non-profit organization, had standing because the defendants' racial steering practices impaired its ability to provide services and drained its resources. *Id.* at 378-79. Because standing as to any one plaintiff is enough, *Rumsfeld v. Forum*

*for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006), the standing of the tester plaintiff was not essential.

More importantly, though, the *Havens Realty* defendants intentionally discriminated against the tester plaintiff based on racial animus. *Id.* at 373-74. They told white prospective renters one thing, and they told black prospective renters a different (and false) thing. The tester plaintiff, who was "the object of a misrepresentation made unlawful under § 804(d)," thus "suffered injury in precisely the form the statute was intended to guard against." *Id.* at 373-74. Laufer cannot show she suffers the harm the ADA was designed to guard against. The substantive Title III right at issue is the right "to be free from disability discrimination in the enjoyment of the facility." *Houston*, 733 F.3d at 1332. The regulation requiring hotels to include certain information on their websites—28 C.F.R. § 36.302(e)(1)—is specifically tied to 42 U.S.C. § 12182, which prevents discrimination in the enjoyment of a facility. There is no standalone right to have certain information on a website.

Moreover—and relatedly—the tester plaintiff in *Havens Realty* had a particularized injury: she was directly lied to and discriminated against. Laufer, on the other hand, faced no particularized harm. She had access to the same information as everyone else.

Finally, the tester plaintiff's injury in *Havens Realty* included the withholding of information she was entitled to. The defendants kept from her (because of her race) the fact that apartments were available. *Id.* at 368-69, 373-74. Laufer argues that she, too, was deprived of information, but she never alleged—much less provided evidence—that the hotel kept information from her. She never alleged that she could not find out everything she wanted by, say, calling the Value Inn. She alleged, instead, only the technical violation of the hotel's not putting that same information on its website. *Cf. Carello*, 930 F.3d at 835 (noting that case was "about accessibility accommodations, not disclosure" and that plaintiff "does not complain that the Credit Union withheld information . . . [or] that the information was wholly inaccessible to him"; the "alleged injury flows from the Credit Union's failure to support [plaintiff's] software, not its refusal to disclose information about its services").[6]

**III.**

Standing requires an injury that is concrete and particularized—an injury that is "'real,' and not 'abstract.'" *Spokeo*, 136 S. Ct. at 1548. Laufer has not shown any

[6] This also shows why Laufer's reliance on *Federal Election Commission v. Akins*, 524 U.S. 11 (1998), is misplaced. There, the plaintiffs had standing because they were denied access to information *and* they had no way of receiving it but for their claim against the FEC. *Id.* at 21. Further contrasting with Laufer, those plaintiffs had a reason for wanting the information: to help them in evaluating candidates for public office. *Id.* Laufer has no such reason.

such injury. Because Laufer has not established standing, she is not entitled to summary judgment. Her motion (ECF No. 28) is therefore DENIED.[7] Normally, denial of summary judgment would result in a trial. But because Laufer's lack of standing deprives the court of jurisdiction, dismissal is appropriate. We are long past the deadline to amend, and at the recent hearing, Laufer's counsel agreed that if I concluded her asserted injury—her inability to access information on the website—was insufficient to confer standing, dismissal would be appropriate.

Accordingly, the clerk will enter judgment that says, "This case is dismissed for lack of jurisdiction." The clerk will then close the file.

SO ORDERED on September 25, 2020.

s/ Allen Winsor
United States District Judge

[7] None of this is to say that Laufer's goal was improper or that her concerns were invalid. Indeed, courts must be "sensitive to the formidable challenges [disabilities] impose on the navigation of everyday life." *Griffin*, 912 F.3d at 656. But the limitations of federal courts' authority apply to this case as any other.